**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

WILLIE NORTON,

      Movant,

    v.

UNITED STATES OF AMERICA,

      Respondent.

CIVIL ACTION NO.: 5:19-cv-102

(Case No.: 5:92-cr-29)

## REPORT AND RECOMMENDATION

Movant Willie Norton ("Norton"), who is currently housed at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. Doc. 1. The Government filed a Response, and Norton filed a Reply. Docs. 5, 6. After the Government filed a Supplemental Response, doc. 10, the Court conducted a telephonic conference with the parties. Doc. 21. Norton, who is now represented by counsel, filed a post-conference Reply to the Government's Supplemental Response. Docs. 22, 23. The Court requested the parties file additional briefing, which the parties have done. Docs. 24, 27, 30. The Government provided supplemental authority germane to the issues now before the Court. Doc. 31. For the following reasons, I **RECOMMEND** the Court **GRANT** Norton's § 2255 Motion. In addition, I **RECOMMEND** the Court **VACATE** Norton's convictions under Counts 5 and 8 of the indictment and their attendant 20-year, consecutive sentences.

## BACKGROUND

After a 1993 jury trial, Norton was convicted of:

- **Count 1**: Conspiracy to possess with intent to distribute cocaine, in violation of 18 U.S.C. §§ 841(a)(1) and 846.

- **Count 2**: Using or carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

- **Counts 3 and 7**: Traveling in interstate commerce with intent to commit a crime of violence in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(2) (two counts).

- **Count 4**: Assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3).

- **Counts 5 and 8**: Aiding another in using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (two counts).

- **Count 6**: Conspiracy to commit assault with a dangerous weapon, in violation of 18 U.S.C. § 1959(a)(6).

Doc. 1-3 at 5.  United States District Judge Anthony A. Alaimo sentenced Norton to life imprisonment plus 45 years' imprisonment, to be served consecutively with his life sentence. Doc. 5 at 5.  The 45-year portion consisted of 5 years' imprisonment for Count 2 and two 20-year sentences for Counts 5 and 8.  The Eleventh Circuit Court of Appeals affirmed Norton's convictions and sentences.  United States v. Reese, 67 F.3d 902 (11th Cir. 1995).  In 1996, Judge Alaimo reduced Norton's life sentence to 360 months in prison, and his 45-year consecutive sentences remained intact.[1]  Doc. 5 at 5.

---

[1]     The 1996 modification of Norton's sentence arose from an amendment to the United States Sentencing Guidelines, which was made retroactive.

The Eleventh Circuit authorized Norton to file a successive § 2255 motion.[2]  The Eleventh Circuit determined Norton made a prima facie showing that he is entitled to relief under United States v. Davis, 139 S. Ct. 2319 (2019).  In Davis, the United States Supreme Court determined the residual clause of § 924(c)(3)(B) is unconstitutionally vague.  The Eleventh Circuit authorized Norton to file a successive § 2255 motion because he was convicted under § 924(c) on Counts 5 and 8.  Doc. 1-3 at 6, 7.  The Eleventh Circuit noted there is a dearth of binding precedent on whether the predicate offenses for Norton's convictions on Counts 5 and 8 "categorically qualify as a crime of violence under the elements clause of § 924(c)(3)(A)."  Id. at 7–8.

Norton has now filed his authorized successive § 2255 Motion to challenge his sentence, and the Government filed a Response.  Docs. 1, 5.  Norton filed a Reply.  Doc. 6.  The Government filed a Supplemental Response, to which Norton filed a Reply and Supplement.  Docs. 10, 22, 23.  The Government filed a Surreply, and Norton filed a Sur-Surreply.  Docs. 27, 30.  In addition, the Government filed a Notice of Supplemental Authority.  Doc. 31.  This matter is fully briefed and ripe for the Court's review.

## DISCUSSION

### I. Norton's Count 8 Conviction

Norton contends his Count 8 conviction should be set aside and he should be resentenced.  The parties agree the validity of the Count 8 conviction depends on whether Count 6 (conspiracy

---

[2]     Norton filed at least two previous § 2255 motions and several other post-conviction motions attempting to reducing his sentence, doc. 5 at 6 (citing cases and motions), but these motions are not germane to the issues now before the Court.

to commit assault with a dangerous weapon) constitutes a "crime of violence."[3]  The

Government concedes Norton's conviction on Count 6 "does not qualify as a crime of violence

[under § 924(c)(3)]."  Doc. 5 at 1.

In Davis, the Supreme Court "extended its holdings in Johnson v. United States, [576

U.S. 591] (2015)[,] and Sessions v. Dimaya, 138 S. Ct. 1204 (2018), to § 924(c) and held that

§ 924(c)(3)(B)'s residual clause, like the residual clauses in the Armed Career Criminal Act and

18 U.S.C. § 16(b), is unconstitutionally vague."  In re Navarro, 931 F.3d 1298, 1301 (11th Cir.

2019) (citing Davis, 139 S. Ct. at 2324–25, 2336).  However, in Davis, the Supreme Court left

undisturbed the elements clause of § 924(c)(3).  139 S. Ct. at 2323–36.  "Therefore, if the

predicate felony for a § 924(c) conviction qualifies as a crime of violence under the elements

clause, that conviction is valid even after Davis."  Weaver v. United States, CV119-142, CR114-

030, 2020 WL 6325724, at *7 (S.D. Ga. Oct. 2, 2020), *report and recommendation adopted*,

2020 WL 6325703 (S.D. Ga. Oct. 28, 2020).

At the time of Norton's prosecution, "crime of violence" was defined as:

[A]n offense that is a felony and—

> (A)    has as an element the use, attempted use, or threatened use of
> physical force against the person or property of another, or

> (B)    that by its nature, involves a substantial risk that physical force
> against the person or property of another may be used in the course
> of committing the offense.

---

[3]      In its briefing, the Government suggests Count 7 (violation of the Travel Act) could serve as a
predicate offense to support Norton's Count 8 conviction.  Doc. 5 at 14–19; Doc. 10 at 11 (withdrawing
any reliance on Count 7 as a predicate act); Doc. 27 at 15 (ostensibly re-urging reliance on Count 7 as a
predicate offense for Count 8).  However, the indictment clearly states Count 8 was predicated solely on
Count 6 (conspiracy to commit assault with a dangerous weapon).  Doc. 22-1 at 11–12.  Additionally, the
Pre-Sentence Investigation Report ("PSR"), which restates portions of the indictment and only references
§ 1959 (not § 1952), confirms Count 8 was predicated only on Count 6.  Accordingly, the Court need not
address whether Count 7 could have served as a predicate offense for Count 8, as it clearly did not.

18 U.S.C. § 924(c)(3).  Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in relation to,' or possessing a firearm 'in furtherance of,' any federal crime of violence . . . .," and these increased penalties are to be served consecutively to other sentences.  Davis, 139 S. Ct. at 2324–25 (quoting § 924(c)(1)(A)).  Subsection (A) is the "elements clause;" subsection (B) is "residual clause," which has been deemed unconstitutional.  In re Pollard, 931 F.3d 1318, 1320 (11th Cir. 2019).

Although the Government concedes Count 6 is not a valid predicate offense for Count 8, the Government maintains Norton cannot meet his burden of showing the jury relied solely on the residual clause in determining his conviction on Count 8 was a crime of violence for purposes of § 924(c).  Doc. 27 at 1–5; Doc. 31 at 2.  In support of its position, the Government cites Beeman v. United States, 871 F.3d 1215 (11th Cir. 2017), and In re Hammoud, 931 F.3d 1032 (11th Cir. 2019).[4]  Doc. 27 at 1–5.  In Beeman, the Eleventh Circuit explained a § 2255 movant raising a challenge based on Johnson bears the burden to show it is more likely than not the sentencing court relied solely on the residual clause in imposing a sentencing enhancement under the Armed Career Criminal Act.  In In re Hammoud, the Eleventh Circuit confirmed that a § 2255 movant would have to carry the same burden to succeed on challenge under Davis— namely, the movant must show more likely than not his § 924(c) conviction arose solely from § 924(c)(3)'s residual clause.

---

[4]     Norton argues the Government's arguments relating to Beeman v. United States, 871 F.3d 1215 (11th Cir. 2017), should be "stricken as outside the bounds of the permitted surreply."  Doc. 30 at 2.  The Court cannot do this.  Tavera v. United States, 816 F. App'x 402, 406 (11th Cir. 2020) (observing a court is to follow binding precedent, even if the Government failed to raise it).

The Government's position on Norton's burden is a correct statement of law.  However, these cases and their principles do not apply to Norton's conviction on Count 8.[5]  Norton's Count 8 § 924(c) conviction was based solely on the predicate offense in Count 6, conspiracy to commit a violent crime in aid of racketeering activity ("VICAR"), in violation of 18 U.S.C. § 1959(a)(6).  Doc. 22-1 at 1, 8–10, 11–12 (Indictment, pp. 1, 8–10, 11–12).  The Government concedes conspiracy to commit a VICAR offense (i.e., Count 6) is not a crime of violence under the elements clause or the invalidated residual clause.[6]  Thus, it is immaterial whether the jury relied on the elements or residual clause (or both or neither) in convicting Norton on Count 6.  Because Count 6 of the indictment did not constitute a crime of violence under § 924(c)(3)'s elements clause, Count 6 cannot be a valid predicate offense to support Norton's Count 8 § 924(c) conviction and resultant 20-year, consecutive sentence.  Hartsfield v. United States,

---

[5]    The Court acknowledges Norton's argument he should not be required to meet any Beeman burden regarding his Davis claims.  Doc. 30 at 3 n.1.  Indeed, some courts have expressed concern about applying Beeman in these circumstances.  See Order, Watson v. United States, Case No. 1:04-cr-0591 (N.D. Ga. Mar. 9, 2020), ECF No. 428 (observing applying Beeman on a Davis claim likely requires the court to engage in impermissible judicial factfinding); Order, United States v. Wainwright, Case No. 19-62364-CIV (S.D. Fla. Apr. 6, 2020), ECF No. 22, pp. 29–32 (observing a movant's burden on a Davis claim is simply to show it is "unclear" if the jury based its conviction on a § 924(c) charge on an invalid predicate offense).  However, the Eleventh Circuit has stated on more than one occasion a § 2255 movant must meet the burden described in Beeman when pursuing a Davis claim.  See, e.g., In re Hammoud, 931 F.3d at 1071.

[6]    The Government's concession is a reasonable one.  Count 6 charged conspiracy to commit a VICAR offense.  The Eleventh Circuit has concluded conspiracy to violate the Hobbs Act and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") are not a crimes of violence under the elements clause of § 924(c)(3).  Brown v. United States, 942 F.3d 1069, 1075 (11th Cir. 2019); United States v. Green, 981 F.3d 945 (11th Cir. 2020).  Courts considering whether conspiracy to commit VICAR is a crime of violence under the elements clause of § 924(c)(3) have similarly concluded it is not.  See United States v. Pastore, 36 F.4th 423, 428 (2d Cir. 2022); United States v. Lewis, 818 F. App'x 232, 234 (4th Cir. 2020); Pettus v. United States, No. 3:18-CV-00736, 2021 WL 354083, at *4 (M.D. Tenn. Feb. 2, 2021); Bonilla v. United States, No. 07-CR-0097, 2020 WL 489573, at *3 (E.D.N.Y. Jan. 29, 2020); United States v. Rossetto, No. 3:06-CR-01435, 2021 WL 1195902, at *1 (S.D. Cal. Mar. 30, 2021); see also United States v. McCollum, 885 F.3d 300, 309 (4th Cir. 2018) (conspiracy to commit VICAR is not a crime of violence under the elements clause of § 4B1.2 of the United States Sentencing Guidelines).  The Government is right to concede this point.

Case Nos. 20-CV-20362, 07-CR-20584, 2022 WL 4295979, at *5–6 (S.D. Fla. Sept. 19, 2022) (noting Eleventh Circuit precedent the government cited involved "situations where it was <u>unclear</u> if a movant's § 924(c) conviction was based on the elements clause or the now-defunct residual clause[]" and finding movant's convictions for Hobbs Act conspiracy and attempted robbery, as the predicate offenses for the § 924(c) conviction, could not stand because these offenses are not crimes of violence (emphasis in original)); <u>see also</u> <u>United States v. Hill</u>, Case No. 5:17-cr-22, 2022 WL 4534956, at *2 (M.D. Ga. Sept. 28, 2022) (recognizing the Supreme Court's decision in <u>United States v. Taylor</u>, 142 S. Ct. 2015, 2021 (2022), which held an offense cannot be a crime of violence under § 924(c)(3) if "no element" of the offense "requires proof that the defendant used, attempted to use, or to use force."). The Government concedes Count 6 cannot serve as a valid predicate offense to support the Count 8 conviction, and, thus, there would be no purpose in having Norton show the jury relied on § 924(c)'s residual clause when convicting him on Count 8. Doc. 5 at 1–2, 10; Doc. 27 at 2 n.2.

The Government's argument that Norton must carry a burden under <u>Beeman</u> regarding Count 8 would yield a bizarre result, if accepted. Under the Government's approach, where only one possible offense could serve as a predicate offense to support a § 924(c) conviction and the law is clear (and all parties agree) that one offense cannot constitute a predicate offense under § 924(c)'s elements clause, a § 2255 movant would still need to show the residual clause was actually relied on by the jury when convicting the movant on the § 924(c) charge. But, in those circumstances, it would not matter if the jury relied on the elements clause, the residual clause, or something else because there is simply no qualifying predicate offense that could support the § 924(c) conviction. The burden described in <u>Beeman</u> has no meaningful application in such circumstances. On the other hand, where multiple offenses could have served as a predicate

offense for a § 924(c)—perhaps, some valid and some invalid—it is reasonable to require the movant to show an invalid predicate offense served as the basis for the § 924(c) conviction. Norton's Count 8 § 924(c) conviction was based solely on the offense charged Count 6, and everyone agrees Count 6 cannot serve as a predicate offense for a § 924(c) conviction. Therefore, it is irrelevant whether Norton can show the jury actually relied on the residual clause in convicting Norton on Count 8.  Viewed differently, it is clear Count 6 cannot qualify as a predicate offense under § 924(c)(3)'s elements clause, so Norton's § 924(c) Count 8 conviction could only possibly have been based on § 924(c)(3)'s unconstitutional residual clause, and, as a result, Norton satisfies any burden he has under <u>Beeman</u>.[7]

For these reasons, I **RECOMMEND** the Court **GRANT** this portion of Norton's § 2255 Motion and **VACATE** Norton's 20-year, consecutive sentence under Count 8.

## II.    Norton's Count 5 Conviction

Norton asserts his Count 5 § 924(c) conviction is invalid under <u>Davis</u> because this conviction is predicated on his conviction on Count 4, which no longer qualifies as a "crime of

---

[7]       This conclusion is consistent with the Eleventh Circuit's recent discussion in <u>United States v. Alvarado-Linares</u> regarding application of the <u>Beeman</u> burden in the context of a § 924(c) <u>Davis</u> claim. 44 F.4th 1334, 1341 (11th Cir. 2022) (concluding whether the movant meets his <u>Beeman</u> burden turns on "legal principles alone" where the only dispute in a <u>Davis</u> claim is whether the sole underlying predicate offense satisfies the definition of crime of violence in § 924(c)(3)'s elements clause).

Additionally, the Court need not address the analysis in <u>Granda v. United States</u>, 990 F.3d 1272, 1293 (11th Cir. 2021).  In <u>Granda</u>, the Eleventh Circuit considered how to address a <u>Davis</u> claim where multiple predicate offenses are "inextricably intertwined" with one another and some of those offenses can serve as predicate offenses under the elements clause definition of crime of violence, while others cannot.  The Eleventh Circuit concluded a reviewing court in such circumstances should only grant a § 2255 motion where the court has "grave doubt about whether the inclusion of the invalid predicate had a substantial influence in determining the jury's verdict." 990 F.3d at 1293.  Here, there is only a single potential predicate offense—Count 6—that could support Norton's conviction on Count 8.  Thus, <u>Granda</u> is not applicable to these circumstances.

violence under § 924(c)(3).[8]  Doc. 1 at 4.  Norton seeks to have his conviction under Count 5 vacated and to be resentenced.  Id. at 12.

The Government disagrees.  The Government argues Norton's Count 4 conviction (assault with a dangerous weapon in aid of racketeering under § 1959(a)(3)) still qualifies as a crime of violence under the elements clause of § 924(c)(3) and the Court should deny this portion of Norton's § 2255 Motion.  Doc. 5 at 2; Doc. 10 at 1.

Norton argues intervening, controlling precedent shows Count 4 no longer qualifies as a crime of violence under § 924(c)(3)(A)'s elements clause.  Doc. 22 at 3.  Norton states his Count 4 conviction relies on the predicate offense of aggravated assault under Georgia law, which is no longer a crime of violence under § 924(c)(3).  Id.

### A.     Whether the Jury, More Likely Than Not, Relied on the Residual Clause in Convicting Norton on Count 5

As with Count 8, the Government also argues Norton cannot carry his burden under Beeman to show more likely than not the jury relied on § 924(c)(3)'s residual clause when convicting Norton on Count 5.  The Court addresses this issue first, before considering whether Count 4 can constitute a valid predicate offense for Count 5.

The circumstances of Norton's challenge to his Count 5 conviction are slightly different from his challenge to his Count 8 conviction.  Count 6—conspiracy to commit a VICAR offense—was the only possible predicate offense to support the Count 8 conviction.  The parties

---

[8]      There is some ambiguity in the briefing about whether Count 3 could have also served as a predicate offense for Count 5.  Norton initially stated his Count 5 conviction was predicated on both Count 3 and 4 but then concluded Count 5 was not based on Count 3.  Compare Doc. 1 at 4 with Doc. 22 at 3.  The Government initially conceded Norton's Count 3 conviction (under § 1952(a)(2)) does not qualify as a crime of violence supporting his conviction on Count 5 but then withdrew its concession.  Doc. 10 at 1, 11; Doc. 27 at 15–16.  Whether the Government concedes this is of no moment.  Count 3 is plainly not a predicate offense Count 5.  The indictment only relies on Count 4 as a predicate offense for Count 5.  Doc. 22-1 at 8 (Indictment, p. 8).  Therefore, the Court will only address whether Count 4 can serve as the predicate offense for Norton's Count 5 conviction.

agree the conspiracy offense in Count 6 cannot serve as a valid predicate for the Count 8 conviction.  In contrast, Count 4—commission of a VICAR offense—is the only possible predicate offense to support the Count 5 conviction.  The parties *disagree* about whether the offense in Count 4 can serve as a valid predicate offense for the Count 5 conviction.  This distinction has no bearing on determining whether Norton has met his burden under Beeman.  The issue is whether Count 4 can serve as valid predicate offense for the Count 5 conviction, and this is a determination that turns on "legal principles alone."  See Alvarado-Linares, 44 F.4th at 1341.  It makes little sense to require Norton to show the jury actually did rely on § 924(c)(3)'s residual clause in convicting him on Count 5.  The question is simply a legal one.  Therefore, I conclude Norton has meet any burden he has under Beeman.

Even if Norton were required to show as a "historical fact" it was more likely than not the jury relied on the residual clause in § 924(c)(3)—and not the elements clause—when convicting him of Count 5, he does so here.  The indictment identifies Count 4 as the only crime of violence supporting Norton's Count 5 charge.  Doc. 22-1.  In Count 4, Norton was charged with committing violent crimes to aid VICAR offenses, in violation of § 1959(a)(3).  Id.  Specifically, Norton was charged in Count 4 with "knowingly and intentionally assault[ing], and aid[ing] in the assault of, Sammy Brown, with a dangerous weapon, which assault resulted in serious bodily injury upon and to Sammy Brown, in violation of O.C.G.A. [§] 16-5-21 . . . ."  Id. at 7–8 (Indictment, pp. 7–8).  Convictions under § 1959(a)(3) carried with them a term of imprisonment of no more than 20 years, making Norton's Count 4 conviction a felony.  18 U.S.C. § 1959(a)(3).

In instructing the jury on Count 5, the Court stated:

> The third element requires proof that the defendant under consideration committed the act of violence specified in Count Four and that the act of violence resulted in the serious bodily injury to Sammy Brown.  Assault with a dangerous weapon is a violation of [a] provision of the Official Code of Georgia.

> That particular Section provides that a person is guilty of aggravated assault when he or she, one, attempts to commit a violent injury to the person of another, or commits an act which places another in reasonable apprehension of immediately receiving a violent injury and, secondly, that the assault is with the intent to murder, to rape, or to rob, or with a deadly weapon or with any object, device or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.

> In that regard, serious bodily injury means one creating a substantial risk of death or protracted impairment of health or protracted loss or impairment of the function of any bodily organ.

Doc. 5-3 at 22.  Earlier in the jury charge, the Court explained that for Count 4, the Government would need to prove "the defendant used, attempted, or threatened to use physical force against the person or property of someone else.  Therefore, such offenses would be crimes of violence . . . ."  Id. at 17 (charging the jury on the requirements for a conviction on Counts 4 and 6).  But then the Court stated "crime of violence" "means any crime that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of someone else may be used in the course of committing the offense."[9]  Id. at 17–18.  The Court then immediately stated, "You are instructed that the crimes charge[d] in Counts Four and Six are, in fact, felony offenses; but it is for you to decide whether they are also crimes of violence, as I have just defined that term for you."  Id. at 18 (emphasis added).

The Government recognizes the instruction on the definition of "crime of violence" tracks, almost verbatim, the language of § 924(c)(3)'s unconstitutional residual clause.  Doc. 27 at 4 (referencing Doc. 5-3 at 17–18).  But the Government also points out another portion of the jury charge—the portion related to Count 4— resembles the language in § 924(c)(3)'s elements clause.  The Government argues this language aligns with the elements clause and, therefore,

---

[9]    The indictment contains no indication as to whether Norton was charged under the residual clause or the elements clause; the indictment merely states in Count 5 that Count 4 was a crime of violence. Therefore, the Court focuses its attention on the jury charge.

Norton cannot carry his <u>Beeman</u> burden.  The Court agrees the jury instructions contain some language consistent with both the residual and elements clauses of § 924(c)(3) but disagrees with the Government as to the result to be reached.

The Court's instruction on the definition of crime of violence precisely tracks the language of the residual clause, which is important.  That definition of crime of violence was given to the jury in the Court's jury instruction on Count 5, which is the relevant count for Norton's <u>Davis</u> challenge.  Doc. 5-3 at 17, 22.  Even though the Court also instructed the jury on the elements clause when discussing Count 4, the Court directed the jury's attention to its given definition of "crime of violence," which, again, tracks the residual clause's language.  Indeed, the Court emphasized the jury would need to determine whether Count 4 constituted a crime of violence, as that term is defined in § 924(c)(3)'s residual clause, in order to determine if Norton was guilty of committing the act alleged in Count 5.  Thus, Norton has shown his conviction under Count 5 was more likely than not a result of the unconstitutional residual clause's application and, therefore, he meets his burden under <u>Beeman</u>.  Next, the Court must determine whether Norton's commission of Count 4 constitutes a crime of violence under the elements clause of § 924(c)(3).

**B.     Whether Norton's Conviction on Count 4 Constitutes a Crime of Violence Under § 924(c)(3)'s Elements Clause**

Norton's conviction under Count 5 is predicated on Count 4, a VICAR ("Violent Crime in Aid of Racketeering") offense.  A person commits a VICAR offense "when he, 'for the purpose of gaining entrance to or maintaining or increasing a position in'" an enterprise, "'murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States . . . .'"  <u>Alvarado-Linares</u>, 44 F.4th at 1342

(quoting § 1959(a)).  In the indictment, Count 4 is expressly predicated on a violation of Georgia's aggravated assault statute, and the jury was instructed on Georgia law regarding the offense.  Because of this, the Court analyzes Norton's VICAR conviction on Count 4 under Georgia law.[10]  Id. at 1343 (noting, where the indictment charged VICAR violations based on state law and the trial court gave instruction to determine violation under state law, a court must look to state law to determine whether that crime is a crime of violence under the elements clause).  To do this, the Court must now determine whether the VICAR offense based on aggravated assault under Georgia law, as charged in Count 4, is a crime of violence under the elements clause of § 924(c)(3).[11]

To determine whether a § 1959(a)(3) crime "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," for purposes of the still-intact elements clause, § 924(c)(3)(A), the Court must use a "categorical approach" to make this determination.  United States v. Mathis, 579 U.S. 500, 503–06 (2016).  "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'"  Id. at 504 (quoting Black's Law Dictionary (10th ed. 2014)).  In situations where the statute does "not set out a single crime" but is "divisible," "courts must

---

[10]     The Government acknowledges "this Court would analyze the VICAR statutes with reference to Georgia law . . . ." because the Court instructed the jury on Georgia law.  Doc. 31 at 2.

[11]     It is worth noting a § 924(c) conviction must be predicated on commission of a "crime of violence," while § 1959(a) VICAR offenses must be predicated on the commission of a "violent crime." One might assume, because the two statutes use such similar terms, that would end the inquiry as to whether a § 1959(a) VICAR offense can serve as a predicate "crime of violence" offense under § 924(c)(3).  Indeed, Judge Newsom recently acknowledged the peculiarity of analyzing whether a VICAR "violent crime" is also § 924(c)(3) "crime of violence" under the categorical approach.  Alvarado-Linares v. United States, 44 F.4th 1334, 1348 (11th Cir. 2022) (Newsom, J. concurring) (suggesting the categorical approach may have "jumped the shark").  But "violent crime" is not defined anywhere in § 1959(a), while "crime of violence" is defined in § 924(c)(3)—and only half of that § 924(c)(3) definition passes constitutional muster.  As a result, an underlying offense may constitute a "violent crime" under § 1959(a), but a § 1959(a) offense based on that same underlying offense may not constitute a "crime of violence" under § 924(c)(3).  Indeed, that is true in this case.

identify which crime in the statute formed the basis of the defendant's conviction." United

States v. Gundy, 842 F.3d 1156, 1162 (11th Cir. 2016).  For such divisible statutes, courts use a

"modified categorical approach," in which the reviewing court looks to a limited class of

documents (for example, the indictment, the jury instructions, or plea agreement and colloquy) to

determine what crime, with what elements, a defendant was convicted of [sic]." Id.; United

States v. Moss, 920 F.3d 752, 757 (11th Cir. 2019), *opinion reinstated*, 4 F.4th 1292 (11th Cir.

2021).  Stated another way, the modified categorical approach focuses on the elements of the

statutory offense and not on that offense's means of commission.

> Section 1959(a)(3) provides:
>
> Whoever, as consideration for the receipt of, or as consideration for a promise or
> agreement to pay, anything of pecuniary value from an enterprise engaged in
> racketeering activity, or for the purpose of gaining entrance to or maintaining or
> increasing position in an enterprise engaged in racketeering activity, murders,
> kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in
> serious bodily injury upon, or threatens to commit a crime of violence against any
> individual in violation of the laws of any State or the United States, or attempts or
> conspires so to do, shall be punished—
>
> > for assault with a dangerous weapon or assault resulting in serious bodily
> > injury, by imprisonment for not more than twenty years or a fine under
> > this title, or both[.]

This statute is "divisible" because it "list[s] elements in the alternative, and thereby define[s]

multiple crimes." Alvarado-Linares, 44 F.4th at 1342 (holding § 1959 is a divisible statute that

contains "multiple acts that each qualify as a crime," and, therefore, a reviewing court must

"apply the modified categorical approach to determine whether a VICAR offense is a 'crime of

violence' under [§] 924(c)(3)"); Manners v. United States, 947 F.3d 377, 380 (6th Cir. 2020)

(citation omitted).  This statute has five elements: "(1) an enterprise existed; (2) the enterprise

engaged in, or its activities affected, interstate commerce; (3) the enterprise was engaged in

racketeering activity; (4) [defendant] committed violent crimes; and (5) [defendant] committed

the violent crimes to gain entrance to, or to maintain or increase, their position in the enterprise." United States v. Velasquez, 881 F.3d 314, 332 (5th Cir. 2018); Doc. 5 at 11.  The fourth element is the key to determining whether Norton's Count 4 VICAR offense qualifies as a predicate "crime of violence" to support his Count 5 § 924(c) conviction.  Doc. 5 at 11.  Thus, the Court must determine, for purposes of Norton's § 2255 Motion, whether VICAR "assault with a dangerous weapon" is a crime of violence under the elements clause.

In Count 4, Norton was charged with committing, and the jury was instructed on, a VICAR offense under § 1959(a) based on Norton committing aggravated assault in violation of Georgia law.  Recently, in Alvarado-Linares, the Eleventh Circuit considered how to apply the modified categorical approach to a VICAR offense where an indictment and jury instructions relied on state law for the underlying offense.  44 F.4th at 1342.  In that case, the Eleventh Circuit explained the reviewing court must look to state law to determine whether the VICAR offense based on a violation of state law constitutes a crime of violence under § 924(c)(3).[12]  Id. (considering Georgia law on malice murder when determining whether VICAR offenses based on Georgia malice murder and attempted murder constitute crimes of violence under § 924(c)(3)).  Here, Norton's § 924(c) conviction in Count 5 was based on his VICAR conviction in Count 4, and that VICAR charge in Count 4 was based on Norton's commission of aggravated assault under Georgia law.  As a result, the Court must analyze whether aggravated assault under Georgia law qualifies as a predicate offense under the elements clause of § 924(c)(3).

---

[12]     Much of the Government's briefing is devoted to argument the Court should not consider the elements of Georgia aggravated assault in assessing whether Count 4 qualifies as a predicate offense for Count 5.  See, e.g., Doc. 27 at 9 ("[A VICAR offense] is wholly independent from state law and there is no need to resort to analysis of state law.").  The Government argues the Court need only consider whether a generic definition of aggravated assault or the federal common law definition of aggravated assault would constitute a crime of violence under the elements clause.  This argument is untenable in light of the Eleventh Circuit's opinion in Alvarado-Linares, 44 F.4th at 1343, as the Government may be aware.  Doc. 31.  Therefore, this Court will not address the Government's contrary argument any further.

To resolve this issue, the Court must consider the *mens rea* required for the commission of Georgia aggravated assault.  This is because, in <u>Borden v. United States</u>, the Supreme Court determined a criminal offense requiring only a *mens rea* of recklessness cannot count as a "violent felony" under the elements clause of the Armed Career Criminal Act ("ACCA").  141 S. Ct. 1817, 1825 (2021).  Borden pleaded guilty to a § 922(g)(1) charge, and the government sought to enhance his sentence under the ACCA based on a reckless aggravated assault under Tennessee law.  This offense was defined under Tennessee law as "'[r]ecklessly commit[ting] an assault' and either 'caus[ing] serious bodily injury to another' or 'us[ing] or display[ing] a deadly weapon.'"  <u>Id.</u> at 1817 (quoting Tenn. Code Ann. § 39-13-102(a)(2) (2003), § 39-13-101(a)(1)).  The Court found reckless conduct is not aimed in the manner prescribed by "against another" when modifying "use of force" under the ACCA.  Treating reckless offenses as violent felonies under the ACCA would impose larger sentencing enhancements on individuals far from the armed career criminals the ACCA addresses—i.e., "the kind of offenders who, when armed, could well 'use [the] gun deliberately to harm a victim.'"  <u>Id.</u> (citation omitted).  Because the elements clause in the ACCA and the elements clause in § 924(c)(3) are essentially identical, it is appropriate to apply the approach in <u>Borden</u> when evaluating whether an offense qualifies as a predicate offense under § 924(c)(3).  <u>See</u> <u>Alvarado-Linares</u>, 44 F.4th at 1334.  In other words, if an offense does not require a showing of more than a reckless *mens rea*, it cannot serve as a predicate offense for a § 924(c) conviction.  <u>Id.</u> ("[O]rdinary recklessness crimes are not crimes of violence under Section 924(c)'s elements clause" (citing <u>Borden</u>)).  Therefore, the Court now must determine whether Georgia aggravated assault, as that offense was charged in Count 4 of the indictment, requires a showing of more than reckless *mens rea*.  <u>Id.</u>; <u>United States v. Toki</u>, 23

F.4th 1277, 1279 (10th Cir. 2022) (finding predicate assault convictions under VICAR based on state law could not support § 924(c) convictions as crimes of violence in light of Borden).

Under Georgia law at the time of Norton's conviction, a person committed the offense of aggravated assault when he or she assaulted:

(1)     With intent to murder, to rape, or to rob; or

(2)     With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]

O.C.G.A. § 16-5-21(a).  In order to commit an aggravated assault under Georgia law, a person must also commit the offense of simple assault.  Guyse v. State, 690 S.E.2d 406, 409 (Ga. 2010). "A person commits the offense of simple assault when he either (1) [a]ttempts to commit a violent injury to the person of another; or (2) [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."  O.C.G.A. § 16-5-20(a). The Eleventh Circuit has determined both O.C.G.A. § 16-5-20 and § 16-5-21 are divisible. Moss, 920 F.3d at 757–58.  Accordingly, this Court applies the modified categorical approach to determine whether aggravated assault under Georgia law, as Norton was charged in Count 4, is a crime of violence under § 924(c)(3)'s elements clause.

Norton was charged in Count 4 with committing aggravated assault under § 16-5-21(a)(2), namely assault with a deadly weapon.  Doc. 22-1 at 8 (Indictment, p. 8) (charging Norton with assault "with a dangerous weapon").  While the indictment lists a violation of § 16-5-21, it does not specify the applicable simple assault subsection—i.e., § 20(a)(1) or (a)(2)—for which Norton was charged.  Id.  The Court instructed the jury that "a person is guilty of aggravated assault" when that person "attempts to commit a violent crime to the person of another, or, commits an act which places another in reasonable apprehension of immediately

17

receiving a violent injury . . . ."  Doc. 5-3 at 26.  This instruction tracks the language of both

simple assault subsections 16-5-20(a)(1) and (2).  Consequently, the limited class of documents

this Court may use fails to establish which portion of Georgia's simple assault statute was

involved in Norton's Georgia law violation.  Therefore, the Court must "assume that he was

convicted under the 'least of the acts criminalized' by the statute[,]" which is § 16-5-20(a)(2).[13]

See Moss, 920 F.3d at 758; Flores v. U.S. Att'y Gen., No. 21-10514, 2022 WL 248180, at *3

(11th Cir. Jan. 27, 2022) (finding Georgia aggravated assault can be committed recklessly and

with intent and, therefore, is not categorically a crime of violence).

Assuming Norton was convicted under § 16-5-21(a)(2) and § 16-5-20(a)(2) for

aggravated assault, this conviction "cannot qualify as a crime of violence under the elements

clause of" § 924(c)(3).  Moss, 920 F.3d at 759.  The Moss court noted the Georgia Supreme

Court had determined § 16-5-20(a)(2) "does not require proof of specific intent.  All that is

required is that the assailant intends to commit the act which in fact places another in reasonable

---

[13]    I acknowledge one aspect of the relevant documents that gives me pause about my conclusion.
The portion of the indictment charging Georgia aggravated assault in support of Count 4 states Norton
"did knowingly and intentionally assault" the victim.  Doc. 22-1 at 8.  Similarly, the jury charge for this
count states Norton could only be found guilty of Count 4 if he "did knowingly and intentionally commit
the act of violence charged in Count 4."  Doc. 22-1 at 19–20.  This language suggests Norton was charged
and convicted of "knowingly and intentionally" assaulting the victim, and, therefore, suggests—at least
implicitly—Norton was charged and convicted under § 16-5-20(a)(1).  But there are several problems
with putting too much weight on this language.  First, the Government has not argued this language
defines the applicable simple assault provision.  Second, even considering this language, other language
in the jury charge creates significant ambiguity about which simple assault provision was at play.  Third,
it is unclear whether merely invoking a specific intent standard relative to an offense that does not require
specific intent would resolve a Borden issue (i.e., there is no indication a crime that does not satisfy the
elements clause of § 924(c)(3) can be converted into one that does simply by adding "knowing and
intentional" to the portion an indictment charging the offense).  Fourth, placing too much emphasis on
this language may run afoul of applying the categorical approach with fidelity and may run afoul of the
requirement in Moss for the Court to assume Norton was convicted under the least criminalized act in the
statute.  While this language does give me some pause, I do not find it requires a different result.

apprehension of injury, not a specific intent to cause such apprehension."[14] Id. at 758 (quoting Patterson v. State, 789 S.E.2d 175, 177 (Ga. 2016)); see also United States v. Carter, 7 F.4th 1039, 1041 (11th Cir. 2021) (applying Moss and noting defendant's previous conviction under § 16-5-21(a)(2) is not a violent felony and could not support classification as armed career criminal under the ACCA).

In sum, the Court must assume Norton's conviction on Count 4 was based on his commission of Georgia aggravated assault as set forth § 16-5-21(a)(2) and § 16-5-20(a)(2), and neither of those provisions requires any specific intent like the knowledge or purpose required under Borden. Consequently, Norton's Count 4 conviction is not a crime of violence under the elements clause of § 924(c)(3) and cannot serve as a predicate offense to support his conviction on Count 5. Thus, Norton's conviction and sentence on Count 5 should be vacated.

The Government raises an additional argument the Court must address. The Government points out, in order for Norton to be convicted on the Count 4 VICAR offense, it had to prove

---

[14]     The Government states the Georgia Supreme Court has found the aggravators of § 16-5-21(a)(1) (establishing aggravated assault when one assaults "with intent to murder, to rape, or to rob") "require specific intent." Doc. 27 at 12. As a result, the Government argues controlling caselaw fails to establish "no Georgia aggravated assault conviction could qualify as a crime of violence." Id. at 13. In other words, the Government argues a conviction for aggravated assault under § 16-5-21(a)(1) could require specific intent, and, therefore, such a conviction could qualify as a crime of violence under the elements clause. While aggravated assault under § 16-5-21(a)(1) may require a showing of specific intent, the Court cannot conclude Norton was convicted under that provision. To the contrary, the indictment strongly suggests Norton was convicted under § 16-5-21(a)(2). Compare O.C.G.A. § 16-5-21(a)(2) (An individual commits aggravated assault when he assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.") with Doc. 22-1 (Indictment, p. 8) (charging Norton with committing assault "with a dangerous weapon, which assault resulted in serious bodily injury"). Admittedly, the jury charge regarding aggravated assault creates some ambiguity because it contained language tracking both § 16-5-21(a)(1) and (a)(2). Doc. 22-3 at 22. Under these circumstances, either the indictment conclusively establishes Norton was convicted under § 16-5-21(a)(2) only, or the record is ambiguous as to whether he was convicted under (a)(1) or (a)(2), in which case Moss would require the Court to "assume [Norton] was convicted under the 'least of the acts criminalized' by the statute," which would be subsection (a)(2). Either way, the Court must assume Norton was convicted under § 16-5-21(a)(2), and the Government has pointed to no authority suggesting the aggravators in subsection (a)(2) require specific intent.

Norton committed aggravated assault "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity."  Doc. 10 at 6–10 (citing the required elements for a conviction under § 1959(a)).  The Government refers to this requirement as the "motive element" of a VICAR offense and highlights it is separate from the need to prove the underlying violent crime.  The Government argues the presence of a "motive element" eliminates any possibility Norton was convicted of a crime that required a less than knowing or intentional *mens rea*.  In other words, the Government argues the additional requirement in the VICAR statute eliminates any <u>Borden</u> problem with the Count 4 VICAR offense serving as a predicate for the § 924(c) conviction on Count 5.

The Government is incorrect.  The "motive element" in the VICAR statute is not connected in any way to whether a VICAR offense is a crime of violence under the elements clause in § 924(c)(3).  As explained in <u>Borden</u>, for an offense to constitute a crime of violence under the elements clause, the crime must require more than a reckless *mens rea*.  141 S. Ct. at 1825.  In <u>Borden</u>, the Court focused on the elements clause language of "use of physical force" and "against the person of another" and concluded these terms require a volitional element in the predicate offense.  The Court's analysis in <u>Borden</u> plainly focused on the individual's *mens rea* regarding the violent aspects of the underlying offense.  The VICAR motive element, in contrast, has no relationship to violent aspects of the underlying offense.  The circumstances of Norton's case highlight this distinction.  The Government was required to prove the motive element for Norton to be convicted on Count 4—namely, that Norton acted "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise"—but proof of this element has no bearing on Norton's *mens rea* in committing the violent aspects of aggravated assault. Indeed, it is clear under Georgia law an individual may commit aggravated assault, even with a

deadly weapon, with only a reckless *mens rea*, and it is not difficult to imagine how one might engage in such conduct "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise."[15]  Because the VICAR motive element has no bearing on "use of physical force" "against the person of another," it has no bearing on whether a VICAR conviction can serve as a predicate offense under the elements clause of § 924(c)(3).

The Government's reliance on United States v. Walton, 1:16-CR-145, 2018 WL 7021860 (N.D. Ga. Nov. 15, 2018), is misplaced.  In Walton, the trial court addressed whether the predicate offenses of VICAR murder and VICAR attempted murder were crimes of violence and did so by looking at Georgia's malice murder statute, since state law was referenced in the indictment.  2018 WL 7021860, at *2.  The court rejected defendants' arguments and concluded the predicate offenses under the elements clause have a *mens rea* for an active use of force and, thus, qualified as crimes of violence.[16]  Id. at *3–4.  While there is some discussion in Walton about the VICAR motive element, the motive element played no role in the court's ultimate determination of whether the offenses met the definition of crime of violence in § 924(c)(3).  The court reached its conclusion based on the required *mens rea* for the underlying state offense, not the additional VICAR requirement.

Furthermore, the Government's argument about the motive element, if accepted, would mean any VICAR conviction would automatically qualify as a predicate crime of violence under the elements clause simply because VICAR contains a motive element.  This argument would

---

[15]      Norton provides some examples.  Doc. 22 at 17–18.  Norton posits a scenario where an individual recklessly plays "Russian roulette" with a loaded firearm aimed at another individual in order to elevate his own position in a criminal enterprise.  Such conduct could, in theory, give rise to a conviction for aggravated assault under Georgia law and satisfy the VICAR motive element.

[16]      The predicate offenses in Walton were the same as the predicate offenses involved in Alvarado-Linares.  The court in Walton reached essentially the same conclusions as the Eleventh Circuit did in Alvarado-Linares.

render the Eleventh Circuit's robust analysis of the state offenses underlying the VICAR convictions in <u>Alvarado-Linares</u> completely unnecessary.  The same would be true for the Tenth Circuit Court of Appeals' consideration of similar issues in <u>Toki</u>, 23 F.4th 1277.  Nothing in <u>Alvarado-Linares</u> and <u>Toki</u> suggests the VICAR motive element has any bearing on whether a VICAR conviction constitutes a crime of violence under the elements clause, and the Government has not pointed to any authority supporting its argument.  Ultimately, the Government's argument regarding the VICAR motive element is unconvincing.

For the above-stated reasons, Norton's VICAR conviction in Count 4, which was based on aggravated assault arising under O.C.G.A. § 16-5-21, is not a crime of violence under the elements clause of § 924(c)(3).  Therefore, Norton's conviction on Count 4 cannot serve as a predicate offense to support his conviction and sentence on Count 5, and his conviction on Count 5 should be vacated.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **GRANT** Norton's § 2255 Motion and **VACATE** Norton's convictions under Counts 5 and 8 of the indictment and their attendant 20-year, consecutive sentences.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely,

written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 14th day of October, 2022.


BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA